Argued and submitted December 10, 1980, reversed June 1, 1981

DILLON et al
*Respondents,*
*v.*
CARDIO-KINETICS, INC.,
*Appellant.*
(No. A7906-02792, CA 16908)
628 P2d 1269

Lawrence R. Derr, Portland argued the cause for appellant. With him on the briefs were Weiss, Derr & DesCamp, and Charles P. Starkey, Portland.

Jeffrey M. Batchelor, Portland, argued the cause for respondents. With him on the brief were Spears, Lubersky, Campbell & Bledsoe, James H. Clarke, and Richard H. Williams, Portland.

Before Gillette, Presiding Judge, and Roberts, Judge, and Campbell, Judge Pro Tempore.

ROBERTS, J.

**ROBERTS, J.**

This is an appeal from an order requiring defendant Cardio-Kinetics, Inc., (CKI) to execute a land sale contract in compliance with a decree of specific performance which had been entered four months earlier.[1]

The decree of specific performance which was entered on September 24, 1979, provided:

"1.  Defendants Cardio-Kinetics, Inc. and Edwin and Gloria Ladum shall specifically perform the seller's obligations under the Sales Agreement and Receipt for Earnest Money (the Agreement) dated March 30, 1979, between plaintiffs and Cardio-Kinetics, Inc. for the sale of real property at 3814 N. W. Thurman Street, Portland, Oregon (the Property).

"2.  Defendants' duty to perform as decreed in paragraph 1 is conditioned upon plaintiffs' performance on or before September 30, 1979, of the buyers' obligations under the agreement.

"3.  Upon plaintiffs' performance as specified in paragraph 2 above, defendants Cardio-Kinetics, Inc. and Edwin and Gloria Ladum shall execute as vendors and deliver to plaintiffs for execution as vendees a contract for the sale of the property having terms and conditions consistent with the agreement and shall perform the other obligations of the seller under the agreement.

"4.  Defendants are enjoined until September 30, 1979, from selling, mortgaging, encumbering or otherwise transferring any interest in the property or permitting or suffering any lien to be filed against the property.

"5.  Defendants are enjoined until September 30, 1979, from substantially altering the property or committing waste thereon.

"6.  Defendant Cardio-Kinetics, Inc.'s counter-suit for rescission is dismissed."

No appeal was taken from that decree.

---

[1] A motion was made by plaintiffs to dismiss this appeal because defendants Ladums were not timely served. Ladums are not appellants in this matter and are no longer parties to the suit. We denied the motion. However, it is noted that CKI entered into a contract to sell the property to Edwin and Gloria Ladum in May, 1979 and Mr. and Mrs. Robert Ladum, son and daughter-in-law of Edwin and Gloria, have continued to have possession of the property. That action by CKI was apparently the basis for the original suit for specific performance by plaintiffs.

The pertinent portions of the earnest money agreement, dated March 30, 1979, are as follows: The purchase price of the residence is $198,500; the earnest money receipt is for $5,000, in the form of a note from plaintiffs to CKI; the balance to be paid at closing is $65,500; the remaining balance is to be carried on a contract and paid to CKI in specific amounts at specific times with specific interest; certain listed defects in the property are to be corrected by the seller before closing, including a "[d]riveway to be installed in back of property as per specifications to be arrived at before closing, to include a one car approach to a two car pad"; and "[c]losing to be as soon as possible but in no instance later than September 30, 1979. In the event closing date is beyond May 30, 1979, purchase price to be adjusted upward additionally at a per diem rate based on $2,000 per month."

Following the decree of specific performance plaintiffs' lawyer wrote to the attorney for CKI proposing in essence that nothing should happen until September 30, 1979, in order to determine if plaintiffs would be able to raise the necessary money for the balance of the down payment. CKI accepted that proposal in a letter dated September 26, 1979, in which it was stated:

"With regard to your letter of September 18, we are in agreement that certain requirements of the earnest money agreement need not be met before September 30th. Specifically, the following are to be delayed until after September 30th to determine whether the Dillons are going to be able to perform by tendering the dollar amount required by the agreement:

"* * * * *

"Due to the application of ORS 187.010, the Dillons will have until the end of Monday, October 1, 1979, to tender performance under the earnest money agreement.

"If the tender of $70,500 on or before the close of October 1, 1979 does occur, then the execution of the contract and the security agreements and the performance of the seller's obligations will occur as soon thereafter as practical."

On October 1, 1979, plaintiffs delivered $70,500 ($65,500 balance plus $5,000 on the note) to Transamerica Title Company. The money was accompanied by a letter which stated in part:

"* * * You are to hold these funds until the closing or until further instruction from me. Under no circumstances are you to pay over any of these funds to or for the benefit of Cardio-Kinetics, Inc., except pursuant to instructions signed by me. * * * There is a possibility that a judgment creditor of Cardio-Kinetics, Inc. will attempt to garnish these funds. If a notice or writ of garnishment is served on you, please notify me immediately. * * * Since Cardio Kinetics will not be entitled to any funds until closing, and you hold such funds for my account until then, I believe your proper response to such a writ or notice of garnishment would be that you do not hold any amounts owing to Cardio-Kinetics with respect to this transaction."

CKI was informed by Transamerica of the deposit of money, and plaintiffs met with the president of CKI on October 5, 1979, to discuss plans for the construction of the driveway. There is some disagreement between the parties as to the events between that date and November 9, 1979. Plaintiffs maintain they were working with a landscape architect on plans for the driveway and that plaintiffs were in communication with CKI on November 8, 1979, regarding the driveway and expected the transaction to be closed later in November. CKI claimed it reviewed the letter which plaintiff left with the escrow agent during this time and as a result wrote a letter to plaintiffs on November 9, 1979, repudiating the agreement.

On January 2, 1980, plaintiffs filed a motion for an order requiring defendants to comply with the September, 1979, decree ordering specific performance. On January 25, 1980, the court entered an order which provided:

"1. Defendants (other than Mr. and Mrs. Robert Ladum) shall proceed to execute a land sale contract and perform other obligations of the seller under the Sales Agreement and Receipt for Earnest Money dated March 30, 1979,

"2. In the event the transaction is not closed by March 5, 1980, the parties shall appear before the undersigned to show cause why it cannot be closed."[2]

---

[2] The jurisdiction of the trial court is not challenged and we note *Nieminen v. Pitzer,* 281 Or 53, 573 P2d 1227 (1978), which states

"* * * It is generally conceded that a court of equity retains jurisdiction, after entry of a final decree which is not self-executing, to the extent necessary to give effect to that decree. *Klinker v. Klinker,* 132 Cal App 2d 687,

CKI assigns as error first, the conclusion of the trial court that plaintiffs' deposit of funds under the restrictions stated in their letter of October 1, 1979 was not a "breach of such a substantial nature that would justify the negation of [the earnest money agreement] of March 30, 1979," and second, the court's order requiring CKI to execute a land sale contract because, they maintain, the earnest money agreement is too indefinite to be specifically enforced.

In their first assignment of error CKI argues that plaintiffs were required to relinquish their control over the funds that were paid to Transamerica in order to perform their obligation under the earnest money agreement and the court order requiring performance of buyers' obligations. CKI argues that the failure to relinquish control defeats the purpose of the escrow thus relieving CKI of its obligation to perform.

Plaintiffs respond that the deposit of money with Transamerica was a tender rather than an escrow and as such it could be accompanied by a condition on which the purchaser has a right to insist. *Woods v. Dixon,* 193 Or 681, 240 P2d 520 (1952). We fail to see how the attempted distinction helps plaintiffs. The statements in plaintiffs' letter that the money would be due to CKI "upon closing of the transaction" and that the funds were to be held "until closing" were conditions, plaintiffs contend, upon which they had a right to insist. If that were all plaintiffs said, the payment of the money might well have been a tender, or, for that matter, a valid deposit in escrow; however, plaintiffs said much more than that. The letter stated, "* * * you are to hold these funds until the closing *or until further instruction from me.* Under no circumstances are you to pay over any of these funds to or for the benefit of [CKI], *except pursuant to instructions signed by me."* The letter also stated, "* * * [Y]ou hold such funds for *my* account until [closing] * * *." The emphasized conditions defeat the argument that the payment of money by plaintiffs was a valid tender or deposit in escrow, because the conditions for

283 P2d 83, 88 (1955); *Advanced Management Research, Inc. v. Emanuel,* 439 Pa 385, 266 A2d 673, 676 (1970); *Brown v. Brown,* 135 W Va 579, 64 SE2d 620, 627 (1951). * * *."

payment are not related to the closing of the transaction. Plaintiffs retained complete control over the funds.

By the exchange of letters following the court's first order the parties simply agreed to postpone CKI's obligation to perform until plaintiffs' obligation had been performed. "[T]he parties may themselves agree that a writing * * * shall not be delivered as a contract until the happening of a certain event, or that if such event does not happen there shall be no delivery of [the contract]." *Kinney v. Schlussel et al.,* 116 Or 376, 381, 239 P 818, (1925). The agreement embodied in the letters, however, did not alter the fact that the obligations were to be performed in escrow. In fact, the agreement of the parties was essentially the same as the court's initial order, except that the performance by CKI was no longer triggered by the September 30 deadline.

We conclude that the conditions imposed by plaintiffs on the deposit of money defeated the purpose of the escrow, i.e., to give security to both parties to the transaction and to assure each that the only conditions for performance were those contained in the agreement. By adding new conditions giving plaintiffs complete control over the money, plaintiffs made neither a valid tender nor deposit in escrow of the required funds and therefore did not comply with the decree. Accordingly, CKI was not obligated to perform pursuant to that agreement.

Because of our disposition of the case we do not reach CKI's second assignment of error.

Reversed.