Argued and submitted March 6, affirmed June 29, 1981

## COLEMAN et al,
*Respondents,*

*v.*

## MEDGIN et al,
*Appellants.*

(No. 79-10-350, CA 18587)

630 P2d 404

J. David Bennett, Portland, argued the cause for appellants. With him on the briefs was Keane, Harper, Pearlman and Copeland, Portland.

Nancy S. Tauman, Oregon City, argued the cause for respondents. On the brief were George L. Hibbard, and Hibbard, Caldwell, Canning, Bowerman & Schultz, Oregon City.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

**VAN HOOMISSEN, J.**

This is an action on a land sales contract in which defendants appeal the entry of a decree strictly foreclosing their interests in real property. We review *de novo,* ORS 19.125(3), and affirm.

Defendant Frank Medgin was the assignee of the original buyers under the contract. An amendatory agreement entered into with plaintiffs-sellers on July 10, 1975, provided that Frank Medgin would pay the unpaid balance of the contract, $48,671.89, in annual installments of $5,000, including interest. Payments were due on July 10 of each year. The agreement also provided that Frank Medgin would pay the taxes on the property as they became due. He assigned his interest under the contract to William Medgin, who transferred his interest to Jody Sue Medgin and Marcelana Medgin by quitclaim deed. Both transfers were recorded.

Defendants failed to make the annual installment payment due July 10, 1979, and they have never paid the property taxes, despite plaintiffs' demands that they do so. Plaintiffs declared the full unpaid balance due and filed suit for strict foreclosure. Thereafter plaintiffs moved for summary judgment on January 29, 1980. The trial court entered an interlocutory decree allowing defendants 30 days to pay to the clerk of the court $45,081.45, plus interest from July 10, 1978, taxes, plaintiffs' costs and attorney fees.

Defendants obtained two extensions within which to make the payments: one of sixty days and one of thirty days. Payment to the clerk of the court was therefore due no later than May 30, 1980. That day, Frank Medgin, on behalf of defendants, filed written notice with the clerk of the court, stating that cash sufficient to pay plaintiffs had been deposited in an escrow account.[1] Written tender was

---

[1] The notice provided:

"We tender herewith the sum of $56,139.48 plus a per diem, if necessary, of $10.70, to the date of actual cash in the plaintiffs' hands. Said cash is deposited this day by cashier's check of the Canadian Imperial Bank of Commerce which is deposited this day with the Pioneer National Title Insurance Company, Oregon City Branch, 820 Main Street, P.O. Box 69, Oregon City, Oregon, 97045, Telephone 655-2551, *which tender is based on instructions for title and other matters given this day to the title insurance company."* (Emphasis added.)

made to plaintiffs, who submitted a deed naming Frank Medgin as grantee. However, defendants insisted that the deed should have named Jody and Marcelana Medgin as grantees, as Frank and William Medgin's interest in the property had been conveyed to them.[2] The funds in escrow would not have been released to plaintiffs until such a deed was submitted. Plaintiffs withdrew the deed they had submitted. On June 27, 1980, plaintiffs moved for entry of a final decree of strict foreclosure against defendants. That motion was granted.

Defendants contend that the trial court erred in refusing to find their written tender sufficient under the interlocutory decree. They also maintain that by submitting a form of deed plaintiffs waived their rights to object to the form of tender, and therefore the trial court should have ordered them to accept the tender and to give defendants a deed conveying the property to Jody and Marcelana Medgin.

Defendants' payment of funds into escrow did not comply with the decree ordering that payment be made to the clerk of the court. The escrow agreement was between defendants and a prospective buyer of the property; and the money in the escrow account belonged to this prospective buyer, who instructed the escrow to pay the money to plaintiffs when the title to the property was clear. This apparently meant that the funds would only be released to plaintiffs when clear title could be conveyed to the prospective buyer under the escrow. This was not a condition which defendants had a right to impose upon plaintiffs, especially because defendants' ability to convey clear title was by no means certain.[3]

■ Defendants were given 120 days in which to comply with the interlocutory decree. Instead of paying the

---

[2] The written tender was signed by Frank Medgin, and, as it was he with whom plaintiffs had dealt throughout the redemption period, they assumed that he would be the grantee to be named in the deed.

[3] There is evidence that judgments were outstanding against both Frank and William Medgin. Because the transfers of the property from Frank to William to Jody and Marcelana embodied some of the badges of fraud, *i.e.,* transfers between family members for inadequate consideration, *Evans v. Trude et al. and Champlen et al.,* 193 Or 648, 240 P2d 940 (1952), there is some question as to whether the Medgins could convey clear title to the new buyer.

money to the clerk of the court, as decreed, they made a tender of funds in escrow with conditions attached. That did not comply with the decree, and the trial court did not err in refusing to find that it did. *See Dillon v. Cardio-Kinetics, Inc.,* 52 Or App 627, 628 P2d 1269(1981).

■     Plaintiffs did not waive their rights to object to the tender by submitting the deed. Because the conditions of the escrow were not known to plaintiffs, they could not reasonably formulate objections to it.

> "Before a person to whom a tender is made can interpose an objection he must be apprised of the factors to which he can object." *Beambridge v. Miller,* 235 Or 396, 407, 385 P2d 172 (1963).

Plaintiffs were not informed of the terms and conditions of the escrow until the hearing on their motion for entry of a final decree. Therefore, while they attempted to accommodate defendants by submitting a deed, they did not waive any objection they had to the tender.

■     Defendants also contend the trial court abused its discretion in strictly foreclosing their interests. They maintain that because of the appreciation in value of the property the remedy of strict foreclosure is too harsh and provides a windfall for plaintiffs. The property is now valued at $170,000; defendants owe plaintiffs $48,691.89 plus interest, costs and attorney fees.

■     The Supreme Court said in *Blondell v. Beam,* 243 Or 293, 299, 413 P2d 397 (1966), quoting from *Atkochunas v. Gustafson,* 156 Or 126, 66 P2d 1192 (1937):

> " 'It is well settled in this state that a vendor is entitled to the relief of strict foreclosure where the vendee fails to comply with his contract in the payment of the purchase price. [Citations omitted].' "

However, the remedy of strict foreclosure will not be granted if it would be inequitable to do so. *Marquardt v. Fisher et al,* 135 Or 256, 295 P2d 499, 77 ALR 265 (1931). Where the value of the property has substantially increased, strict foreclosure may be inequitable. *Chaffin v. Ramsey,* 276 Or 429, 555 P2d 459 (1976). In this case, defendants failed to make an annual payment of $5,000; they have been in continuous default for non-payment of taxes; they had over

ten months to pay, ncluding the 120 days following the entry of the interlocutory decree. We find their default is material and attributable solely to their own fault. Equity does not weigh heavily in defendants' favor. *See McCracken v. Walnut Park Garage,* 156 Or 697, 68 P2d 123 (1937); *Swaggart v. McLean,* 38 Or App 207, 589 P2d 1170, *rev den* 286 Or 449 (1979). The trial court did not err in granting strict foreclosure.

Affirmed.