Argued and submitted May 9, 1986, at Pendleton, Oregon, affirmed March 11, 1987

SMITH,
*Respondent,*

*v.*

HAWKINS et ux,
*Appellants.*

(83-08-8487-E; CA A35555)

733 P2d 929

William F. Nichols, Nyssa, argued the cause for appellants. With him on the briefs was Stunz, Fonda, Pratt, Nichols & Kiyuna, Nyssa.

Stephen D. Finlayson, Burns, argued the cause and filed the brief for respondent.

Before Warden, Presiding Judge, and Rossman and Deits, Judges.

DEITS, J.

## DEITS, J.

Plaintiff filed an action for strict foreclosure of defendants' interest under a land sale contract. Defendants counterclaimed for damages for breach of contract. The foreclosure action was bifurcated from the counterclaims and tried to the court, which granted strict foreclosure and entered summary judgment for plaintiff on defendants' counterclaims. We affirm.

On September 18, 1975, plaintiff sold ten acres of land near Burns to defendants Vernie and Kay Hawkins (defendants) on a contract. The contract price was $5,500, payable at $50 a month with interest at 7.5 percent per annum on the unpaid balance. Plaintiff was to deliver a warranty deed on full payment. Defendants could demand a title insurance policy for $5,500 at any time at the plaintiff's expense. Defendants promised to pay all taxes, keep the property free of liens and encumbrances, keep and maintain the property in good order and condition and obtain plaintiff's written permission before alienating any interest in the property. Time was expressly of the essence. Plaintiff was required to give 30 days written notice of default before declaring the contract forfeited, foreclosing the vendees' interest or accelerating the balance. In case of forfeiture or foreclosure, all payments could be retained as rent.

Defendants experienced financial difficulties in the late 1970's. They failed to pay property taxes from 1978 through 1983 and fell behind in their payments. In September, 1982, they found an interested buyer, who agreed to pay $12,000 in cash and assume the outstanding balance on the contract with plaintiff. Plaintiff agreed to allow the assumption if the outstanding interest was fully paid and if the principal was paid down to $4,100. The buyer paid $1,000 in earnest money on October 6, 1982. The closing date was tentatively set for November 15, 1982.

On receipt of a title report, the real estate broker discovered that plaintiff did not have clear title. Plaintiff had purchased the property under contract from Wallace, who had purchased under a contract from people named Root and Davis, who were still the owners of record. The broker attempted to locate the Roots and Davises with the hope of obtaining deeds but was unable to do so. Defendants' buyer

withdrew from the sale because of the title problems. Plaintiff filed a quiet title action against the Roots and Davises on June 19, 1983, and took judgment by default on December 28, 1983; plaintiff received a deed from Wallace on April 19, 1984.

On August 19, 1983, plaintiff filed this action to foreclose defendants' interest. At that time, they owed $4,334.91 in principal, interest on that amount and $1,254.19 in taxes for five years. They had also allowed various liens to attach. Defendants' first affirmative defense requested a judicial sale. They claimed that they had substantially improved the property. Their second affirmative defense alleged that plaintiff was seeking equity with unclean hands. They also counterclaimed that plaintiff had breached the land sale contract by failing to obtain a record title before defendants' sale to the potential buyer was to have closed. Their second counterclaim, labeled "promissory estoppel," alleged that defendants had detrimentally relied on plaintiff's promise to allow the potential buyer to assume the contract and her promise to obtain record title.[1]

At the conclusion of the foreclosure action, defendants moved to dismiss plaintiff's complaint on the basis that she was unable to convey the property free and clear of encumbrances at the time the complaint was filed. That motion was denied. At the conclusion of defendants' case, they moved pursuant to ORCP 23B[2] to amend their pleading to conform to the proof by adding the affirmative defense of waiver of the time of the essence clause. That motion was also denied.

The court found that plaintiff had made a reasonable effort to clear the title and that defendants were in default. An

---

[1] Because promissory estoppel is a shorthand method of contending that action in reliance on a promise results in the formation of a valid enforceable contract, we treat this counterclaim as one for breach of contract. *Schafer v. Fraser,* 206 Or 446, 290 P2d 190, 294 P2d 609 (1956); *see also City of Ashland v. Hoffarth,* 84 Or App 265, 733 P2d 925 (1987).

[2] ORCP 23B provides in part:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues."

interlocutory decree of strict foreclosure was entered, which gave the defendants 90 days to tender the balance of the purchase price plus interest, the taxes which plaintiff had paid and costs and attorney fees, or be foreclosed. Plaintiff moved for summary judgment on defendants' counterclaims, relying primarily on the court's foreclosure findings. The court granted that motion, entered summary judgment and also entered a final judgment granting plaintiff strict foreclosure. Defendants appeal both judgments.

Defendants' assignments of error may be summarized: (1) The trial court improperly denied their motion to amend their answer to conform to the proof; (2) plaintiff's action for strict foreclosure should have been dismissed, because she did not have marketable title when she filed it; (3) plaintiff did not take reasonable steps to clear her title; (4) summary judgment on the counterclaims was improper, because material fact issues remained; and (5), alternatively, the trial court should have ordered judicial sale rather than strict foreclosure.

■ Defendants argue that, pursuant to ORCP 23B, they should have been allowed to amend their pleadings to include the defense of waiver of the time of the essence clause, because the issue was tried with the implied consent of plaintiff. We conclude that, even if the court erred in not allowing the amendment, the error was harmless. Plaintiff alleged that defendants were in default, because they had allowed liens to attach to the property, had failed to keep the payments current and had failed to pay taxes. Although there is evidence that plaintiff waived the time of the essence clause with respect to the payments and taxes, there is no evidence that she waived her right to pursue strict foreclosure on the basis of the liens. That independent basis of default alone supports strict foreclosure.

■ Defendants next argue, relying on *Ward v. James,* 84 Or 375, 164 P 370, 164 P 372 (1917), that plaintiff's action should have been dismissed, because she did not have marketable title when she filed the action. *Ward* is distinguishable. As in this case, the seller did not have a clear title before filing for strict foreclosure but had filed a quiet title action. The court denied foreclosure, because the seller could not supply "good commercial title" at any time during the proceeding.

84 Or at 385. In addition, the quiet title action was contested. In this case, plaintiff's uncontested quiet title action was successfully completed well before the trial had even begun. When the court entered the judgment requiring defendants to tender the entire purchase price within a specified time or lose their equity, they were not at risk had they accepted plaintiff's title.[3]

■ Defendants next argue that plaintiff did not take reasonable steps to clear her title. The contract provides:

> "It is understood and agreed that at the time the purchase price is paid in full, seller will deliver to buyers a warranty deed, conveying the above described property to buyers free and clear of all encumbrances except easements, reservations and restrictions of record."

Under that provision plaintiff was not required to convey title until defendants had paid the purchase price in its entirety. *See Bank of Cal. Nat. Ass'n v. Bishop,* 137 Or 33, 300 P 1023 (1931). Defendants argue that, because plaintiff attempted to clear title so that defendants' sale could proceed, but did not successfully do so, she waived the requirement of full payment before delivery of the deed. We do not agree. Plaintiff's conduct did not constitute a waiver.

■ We next consider whether summary judgment on defendants' counterclaims was proper. Summary judgment is only appropriate when the record, viewed in the light most favorable to the non-moving party, indicates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. ORCP 47; *Kinyon v. Cardon,* 69 Or App 546, 686 P2d 1048, *rev den* 298 Or 427 (1984). Plaintiff's motion relied primarily on findings of fact in the court's opinion and order entered on her claim for foreclosure. Defendant has not brought to our attention any fact issues different from those conclusively determined in the foreclosure suit. Therefore, summary judgment was proper.

■ The final issue is whether the court erred in ordering

---

[3] Defendants also argue, for the first time on appeal, that, because the judgment quieting title was taken against parties who were notified by publication, plaintiff's title was not marketable until one year after entry of the judgment. Because this argument was not made below, we will not consider it. ORAP 7.19(5); *Braught v. Granas,* 73 Or App 488, 698 P2d 1012 (1985). Regardless, the judgment quieting title was more than one year old when the final judgment of strict foreclosure was entered.

strict foreclosure rather than a judicial sale. In determining which of those remedies is appropriate, it is the trial court's responsibility to weigh the equities. *Coleman v. Medgin,* 52 Or App 1049, 630 P2d 404 (1981). Defendants had been substantially in breach of their obligations since 1978 and, at the time when the action was commenced, they still owed over $4,000 in principal. They were also in arrears on taxes since 1978. In fact, plaintiff had been forced to pay back taxes. Defendants also had allowed various liens to attach to the property. The evidence at trial was somewhat contradictory as to the precise value of the property; opinions ranged between $10,000 and $15,000. The court found it to be worth $10,000 on a cash sale, and we accept that as a reasonable estimation. The amount defendants owe in principal, taxes and interest approaches that figure. The court did not err in ordering strict foreclosure.

Affirmed.