Argued and submitted January 21, reversed and remanded February 25, 1998

In the Matter of
Samantha Marie Star Cox
and Axl Kelly Lynn Lowden, Minor Children.

STATE ex rel STATE OFFICE FOR SERVICES
TO CHILDREN AND FAMILIES,
*Appellant,*

*v.*

Tamara Michelle COX,
*Respondent,*

*and*

Wayne Keith LOWDEN, Jr.,
*Respondent Below.*

(94J0826, 94J0917; CA A98677 (Control), A98678)
(Cases Consolidated)

954 P2d 1277

Michael C. Livingston, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Meyers, Attorney General, and Michael D. Reynolds, Solicitor General.

Russell Lipetzky argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Leeson and Armstrong, Judges.

LEESON, J.

**LEESON, J.**

In this termination of parental rights case, ORS 419B.504[1] and 419B.506,[2] the juvenile court granted mother's motion for a directed verdict after the close of the state's case. The court then entered an order of dismissal pursuant to ORCP 54 B(2).[3] The state appeals, ORS 419A.200(1).[4] We reverse and remand.

In May 1994, mother, who was then 20 years old, had two children, ages three years and 7 months, and was living with Lowden, the father of the younger child. At that time, the State Office for Services to Children and Families (SOSCF) received information that mother was buying drugs for Lowden with her state assistance checks, was living a transient lifestyle, and was allowing a person who was dangerous to the children to babysit. In September 1994, a caseworker with SOSCF contacted mother for the first time at a battered women's shelter where mother was staying with the children after she was assaulted by Lowden. SOSCF spoke to

---

[1] ORS 419B.504 provides, in part:

"The rights of the parent or parents may be terminated as provided in ORS 419B.500 if the court finds that the parent or parents are unfit by reason of conduct or condition seriously detrimental to the child and integration of the child into the home of the parent or parents is improbable within a reasonable time due to conduct or conditions not likely to change."

[2] ORS 419B.506 provides, in part:

"The rights of the parent or parents may be terminated as provided in ORS 419B.500 if the court finds that the parent or parents have failed or neglected without reasonable and lawful cause to provide for the basic physical and psychological needs of the child for six months prior to the filing of a petition."

[3] The state originally appealed the juvenile court's order as pursuant to ORCP 60. At oral argument, the state acknowledged that the motion was made and granted pursuant to ORCP 54 B(2). That rule provides, in part:

"After the plaintiff in an action tried by the court without a jury has completed the presentation of plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a judgment of dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief."

[4] ORS 419A.200(1) provides, in part:

"Except as provided in ORS 419A.190, any person or entity, including, but not limited to, a party to a juvenile court proceeding under ORS 419B.115(1) or 419C.285(1), whose rights or duties are adversely affected by a final order of the juvenile court may appeal therefrom."

mother about the allegations and about a continuing lice problem she and the children were having at the shelter.

On October 3, 1994, mother was nine months' pregnant with her third child and was still living in the shelter. She agreed to place her two older children with SOSCF until she could care for all three adequately. After the third child was born, SOSCF arranged for respite care, whereby mother and her infant daughter moved in with a family, the Durhams, for a time. While at the Durham family home, mother spent a lot of time sleeping or sitting on the couch and did not tend to the baby's needs or assist with housekeeping. Subsequently, mother agreed to allow the Durhams to adopt the baby.

On November 22, 1994, SOSCF filed dependency petitions in juvenile court for the two older children because "[t]he child's parents have failed to provide the child with adequate shelter or necessities." Mother and Lowden admitted the jurisdictional allegations of the petitions and entered into a service agreement with SOSCF. The two older children were placed in foster care. The agreement required mother and Lowden to establish a stable residence, to obtain a verifiable source of income to support the family, to complete a parent training program, to develop a positive relationship that did not include domestic violence, and to participate in family counseling with the oldest child. In December, mother moved out of the Durham home and in the first three months of 1995 completed parent training classes. However, Lowden refused to cooperate with SOSCF and dropped out of parent training. By June 1995, mother and Lowden were living with Lowden's brother in a two-room apartment. Neither mother nor Lowden had been able to stay employed or maintain a stable residence. SOSCF staff began to talk to mother about her relationship with Lowden and the negative effect he was having on her ability to stabilize her life and regain custody of her children.

In late June 1995, mother reported to SOSCF that Lowden was in jail, that she had no plans to reunite with him and that she had a new boyfriend and a new address. However, in July, mother did reunite with Lowden. In August, Dr. Gordon conducted a psychological evaluation of mother. That

evaluation revealed that mother has a "scaled" IQ of 85,[5] and a personality disorder that will require several years of therapy before mother could become a competent parent. His recommendation was that mother receive no services. In September 1995, mother's SOSCF caseworker wrote mother a letter expressing concern about the length of time the children had been in foster care and again outlining the goals that mother had to achieve before she could regain custody: drug and alcohol treatment, notifying SOSCF of new addresses, regular visitation, and violence counseling with Lowden. The caseworker told her that failure to achieve those goals would result in SOSCF moving to terminate mother's parental rights.

In October 1995, mother told the Citizens' Review Board that her relationship with Lowden was over, that she had no plans to reunite with him and that she had taken steps to obtain a stable residence. Also in October, mother participated in drug and alcohol counseling and her counselor determined that mother was not in need of treatment. In November, mother had a fistfight with Lowden's new girlfriend in Lowden's presence. In December, mother participated in a domestic violence group and promised to look for a job. At that time, mother was living with Mike Heckert.

In January 1996, mother obtained a restraining order against Craig McClimans, a man with a long history of domestic violence. In March 1996, mother's caseworker reported that Lowden still was not cooperating, that mother had had four jobs in the last six months, that she was participating in a domestic violence group, that she was living with a cousin and that mother was maintaining regular weekly supervised visitation with her two children.

SOSCF followed up that report with letters to mother reiterating that, "[i]f you are truly serious about having your children in your care, you need to get into therapy as soon as possible." Although mother obtained a referral for a

---

[5] Mother's scaled IQ score reflects a combination of her functional and verbal IQ. Her scaled score was lowered by her very low verbal score. Gordon acknowledged that the difference between mother's higher functional IQ and her verbal IQ could be caused both by her limited education and by the extensive abuse she suffered as a child.

counselor the following month, she did not follow through. By May, mother was again living with Lowden, obtained yet another counseling referral, and again did not follow through. On May 11, 1996, mother was treated in the Salem Hospital emergency room for alcohol intoxication. Two days later, the counselor wrote to mother, asking if she still wanted to make an appointment. On May 20, mother reported to SOSCF that she was living with Lowden, but was not in a "relationship" with him, and again promised to look for a job and to find housing.

On June 6, 1996, SOSCF notified mother that it planned to petition for termination of her parental rights. On November 26, mother attempted to commit suicide by taking an overdose of pills. On December 10, SOSCF filed a petition to terminate mother's parental rights.[6] On December 27, 1996, mother again was treated in a hospital emergency room for malnourishment and intoxication and reported that she was suicidal. The termination hearing was held on April 24-25, 1997. After the state rested its case, mother moved for a directed verdict, contending that the state had not shown by clear and convincing evidence that her rights should be terminated. The court granted the motion, explaining:

> "It occurs to me when her first two kids were born, the mother probably qualified for services of the agency herself, not just as a mother of two children but as a child herself. And we are not very many years beyond that at this point.

> "Much of what the agency has been critical of her is typical of the behavior of teenagers and young adults prior to them reaching maturity. I think to some extent at least the agency has been quick to forget that Mother is, to some extent a victim here also, that she was a battered child too, and she also is a sexually abused child, a battered spouse, and she has been subject to that abuse itself.

> "It is not surprising to me, knowing what I do now about domestic abuse and domestic violence, that from time to

---

[6] SOSCF originally petitioned to terminate the parental rights of both mother and Lowden. Lowden did not meet with his court-appointed attorney or appear, and the juvenile court ordered his parental rights terminated. Lowden does not appeal from that judgment. Only mother's parental rights are at issue in this appeal.

time she returned to her abuser strictly because of the economic circumstances she found herself in, the lack of resources, education, and training and unable to provide support for herself, support that she had to sacrifice her own physical safety in order to get a roof over her head and her children. * * *

"* * * * *

"I don't think the agency has come anywhere close in establishing a case for termination of parental rights."

The state objected to the trial court's granting of the motion, arguing that despite the best efforts of SOSCF, mother's circumstances did not materially improve between 1994 and 1996. The state did not challenge the court's authority to grant mother's motion for a directed verdict or its authority to dismiss the case pursuant to ORCP 54 B(2).

On appeal, the state assigns error to the juvenile court's granting of mother's motion for directed verdict and contends that neither ORCP 60 nor ORCP 54 B(2) applies in termination of parental rights proceedings and that we should terminate mother's parental rights on the record before us. Mother responds that "[a]t no point during the trial court proceedings did the State object to the court's authority to entertain what was characterized as a motion for a 'directed verdict,' nor was there any assertion made that the Rules of Civil Procedure did not apply to the proceeding." Mother also argues that the state did not meet its burden of proof and that the juvenile court's order dismissing the petitions should be affirmed. Alternatively, mother argues that the order from which the state is appealing is not appealable and, therefore, the state's appeal should be dismissed.

■ We disagree with mother's latter assertion. The record shows that in entering the order of dismissal the court accomplished all that it intended; further, the order disposed finally of the rights of the parties and was adverse to the state. It is appealable under ORS 419A.200(1). *State ex rel Juv. Dept. v. Paull*, 129 Or App 227, 229, 878 P2d 1135 (1994).

■     We do not consider assignments of error on appeal unless the arguments were made below. ORAP 5.45; *Ailes v. Portland Meadows*, 312 Or 376, 380, 823 P2d 956 (1991). In the termination hearing, the state made no objection on procedural grounds to mother's motion for a directed verdict; therefore, the juvenile court had no opportunity to consider that objection and it is not preserved. Although we agree with the state that the procedural question is important and needs to be resolved, this case comes to us in a posture that does not allow us to do so. ORAP 5.45; *Ailes,* 312 Or at 380.

■■     Because of the posture of the case, we evaluate the juvenile court's grant of the motion to dismiss under ORCP 54 B(2) to determine whether, on the record as a whole, the state introduced sufficient evidence to establish a *prima facie* case for termination of mother's parental rights. *Ranger Ins. Co. v. Globe Seed & Feed Co., Inc.*, 125 Or App 321, 327, 865 P2d 451 (1993), *rev den* 318 Or 458 (1994). We note that only in an "unusually clear case" should a trial court dismiss a nonjury case before the close of all the evidence. *Id.*

■     In this case, the state presented evidence that mother is not a fit parent because of "her untreated personality disorder, her pathological inability to stay out of abusive relationships, her failure to provide for the children and particularly her failure to correct her unstable lifestyle." SOSCF caseworkers met with mother on a regular basis, wrote her numerous letters, and stressed to her the importance of finding stable employment and housing, receiving counseling, and either terminating her relationship with Lowden or undertaking counseling with him. An SOSCF caseworker gave mother telephone numbers and explicit instructions about how to obtain counseling and housing, reminded mother repeatedly to do so, and advised her repeatedly of the consequences of failing to do so. Despite these efforts, mother's circumstances at the time the termination petition was filed in 1996 were remarkably unchanged from 1994. There is evidence in the record that both children are doing well in foster care and are adoptable and that the younger child, in particular, has not formed a strong bond with mother. On this record we conclude that the state established a *prima facie* case that mother's parental rights should be

terminated, ORS 419B.504 and ORS 419B.506, and that termination is in the best interests of the children. Consequently, the juvenile court erred in granting mother's motion for a directed verdict and we reverse and remand for mother to present her case.

Reversed and remanded.