Argued and submitted October 12, reversed in part, vacated in part and remanded for further proceedings November 22, 2000

In the Matter of the Marriage of

Gayle Carol Hochhalter CLARK,
*Appellant,*

*and*

Dean Allen CLARK,
*Respondent.*

(DR95-12-134; CA A107897)

14 P3d 667

Timothy J. Vanagas argued the cause for appellant. On the brief was Gene A. Killeen.

Helen T. Dziuba argued the cause and filed the brief for respondent.

Before Deits, Chief Judge, and Landau* and Brewer, Judges.

BREWER, J.

---

* Landau, J., *vice* Warren, S. J.

# BREWER, J.

Wife appeals from a judgment dismissing a contempt proceeding based on husband's motion for dismissal made at the conclusion of wife's case. ORCP 54 B(2). Wife contends that the trial court's decision erroneously assigned to her the burden of disproving husband's affirmative defense that he was unable to comply with the terms of the judgment dissolving the parties' marriage. Wife also appeals from a supplemental judgment that awarded husband an additional prevailing party fee. ORS 20.190(3). We reverse and remand.

The parties' marriage was dissolved by a stipulated judgment of dissolution entered on October 29, 1996. As part of the property division, wife was awarded the family residence, and husband was ordered to remove a $202,000 mortgage lien against the property within 90 days following the date of the judgment. Husband failed to remove the encumbrance within the time required and, in November 1997, wife instituted a remedial contempt proceeding against husband. ORS 33.055. Husband was adjudged in contempt at a hearing in December 1997, but the contempt judgment subsequently was vacated on procedural grounds. In June 1998, husband satisfied the mortgage indebtedness and discharged the encumbrance.

Despite husband's satisfaction of the judgment, wife continued to pursue her claim of contempt, and in August 1999, the matter came before the court for hearing once more. At the hearing, wife called husband as an adverse witness. On direct examination,[1] husband admitted that he knew of the terms of the judgment and that he had not timely complied with the requirement that he remove the mortgage from wife's residence. Husband testified that he earned approximately $75,000 in net income per year as a chiropractor. He testified further that, by its terms, the mortgage debt had to be paid in full in order to secure the discharge of the encumbrance. He also testified that in late January 1997, his assets consisted of an automobile worth $20,000, shares of stock that were liquidated for $117,000 in June 1998,[2] a

---

[1] Husband's attorney did not cross-examine husband.

[2] There was no specific evidence of the value of the stock awarded to husband in January or February 1997.

retirement account that could have been liquidated for approximately $33,000, and a truck worth $24,000. Husband testified that he had remarried at approximately the same time the mortgage was to be removed. He conceded that he and his current wife purchased a home for $425,000, with a cash down payment of $80,000. Husband testified that he provided approximately one-half of the down payment from the liquidation of his retirement account. His wife provided the balance of the down payment. Husband and his wife also purchased some furnishings for their residence and took a vacation in Hawaii.

Husband testified that he attempted to transfer the encumbrance to his new residence, but the lender would not agree to that arrangement. Husband also approached several lenders about loans that would permit the removal of the encumbrance, but those efforts were not successful. Husband eventually secured a $35,000 business loan, which he applied, along with the proceeds from the sale of all of the stock he received in the property division, toward payment of the mortgage debt. In addition, the lender refinanced approximately $20,000 of the debt to a new loan secured by husband's automobile. The mortgage lender also forgave approximately $30,000 in principal indebtedness in consideration of the payoff.

Wife also called John Niemeyer, president of the mortgage holder, as a witness. On cross-examination by husband's attorney, Niemeyer testified that husband had contacted him on several occasions between March 1997 and June 1998 to negotiate the removal of the mortgage. Husband explored the possibility of transferring the mortgage to his new home, but Niemeyer declined because the new home had insufficient equity. According to Niemeyer, husband "basically said he would pledge anything and everything, whatever it takes to get it done, and came in—that's why he kept coming back and seeing me."

At the close of wife's case, husband moved to dismiss, arguing that the evidence was insufficient to establish that he willfully failed to secure the removal of the mortgage within the time required by the judgment of dissolution. The

trial court granted the motion and provided the following reasoning for its decision:

> "[O]bviously, if there was a pot of money sitting there, it could have been used to pay [the lien]. And, you know, simply a decision not to pay it, the willfulness aspect would be very clear.
>
> "In this case, there wasn't a pot of cash. There were certain assets that were—the liquidity of which [was] in question. And the advisability of liquidating those assets or the reasonableness of doing so is also uncertain.
>
> "Under those circumstances, I don't believe I can find from the facts as presented thus far that there was, in fact, a willful disobedience of a court order. And so contempt would not be appropriate."

The court provided additional findings in the ensuing judgment of dismissal:

> "The court weigh[ed] the credibility of the witnesses based on their demeanor and the court's observations as well as their actual words and the court find[s] that the testimony of witnesses and exhibits admitted into evidence do not, in the light most favorable to [wife], establish that [husband] acted wilfully in failing to pay off and remove the lien * * *."

The court also entered a supplemental judgment awarding husband the sum of $3,000 as an additional prevailing party fee.

■■■■ On appeal, wife first assigns error to the dismissal of the proceeding, contending that the evidence was sufficient to establish each of the essential elements for a contempt judgment: "(1) a valid court order; (2) knowledge of the order by the contemnor; and (3) the contemnor's voluntary noncompliance with the order." *Douthit and Swift*, 125 Or App 466, 470, 865 P2d 479 (1993). Husband concedes that the evidence established the first two elements. However, the parties disagree as to whether the evidence was sufficient to establish husband's *voluntary* noncompliance with the judgment.

■■■ Husband contends that wife failed to establish that he was able to comply with the judgment and, therefore, did

not prove that his noncompliance was voluntary. Wife correctly responds that husband's inability to comply was an affirmative defense. ORS 33.055(10); *see also State ex rel Mikkelsen v. Hill*, 315 Or 452, 458, 847 P2d 402 (1993). Wife argues that the trial court mistakenly assigned to her the burden of disproving husband's defense and, thus, erroneously granted husband's motion to dismiss at the conclusion of her case. For the following reasons, we agree with wife that the court erroneously granted husband's motion.

 ORCP 54 B(2) authorizes a trial court in a nonjury proceeding to enter a judgment of dismissal based on insufficiency of the evidence at the close of the plaintiff's case.[3] That rule applies to proceedings for remedial contempt. UTCR 19.040(1)(a). In reviewing a dismissal under ORCP 54 B(2), we consider the entire record to determine whether evidence established each of the essential elements of the plaintiff's claim. *Castro and Castro*, 51 Or App 707, 713, 626 P2d 950 (1981). The determination of whether the essential elements of a claim have been established—in other words, whether a *prima facie* case was made—is a question of law. *State v. Ely*, 237 Or 329, 390 P2d 348 (1964). We conclude that wife established a *prima facie* claim of contempt.

In *Mikkelsen,* the defendant appealed from his conviction for criminal contempt[4] for failing to comply with a court order to pay child support. The defendant, who had invoked his right to remain silent at trial, argued that the state had not proved that his noncompliance was voluntary. The Supreme Court held that, because *inability* to comply is

---

[3] ORCP 54 B(2) provides:

"After the plaintiff in an action tried by the court without a jury has completed the presentation of plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a judgment of dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment of dismissal against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment of dismissal with prejudice against the plaintiff, the court shall make findings as provided in [ORCP] 62."

[4] In 1991, the legislature revised the contempt statutes to eliminate the terms "criminal" and "civil" contempt. Or Laws 1991, ch 724. Under the revised statutory scheme, a contempt proceeding is either "remedial" or "punitive," depending on the sanction sought and who brings the proceeding. *See Paradis and Keith*, 147 Or App 144, 147, 935 P2d 436 (1997).

an *affirmative defense* to a contempt charge, the state was not required to prove the defendant's ability to comply. 315 Or at 458. Instead, the court concluded, evidence showing the defendant's knowledge of a valid court order and his noncompliance with the order is sufficient to show voluntary noncompliance. *Id*. Once the defendant's knowledge and noncompliance are established, "the burden of going forward with an affirmative defense of inability to comply with the court's order is on the defendant." *Id*. at 459.

Here, husband admitted that he knew the terms of the stipulated judgment and that he did not comply with it within the time required. Thus, under *Mikkelsen*, wife presented sufficient evidence to establish a *prima facie* case of contempt. Husband's contention to the contrary is simply without merit. The decisive question, then, is whether the trial court was authorized to decide the facts, including those pertinent to husband's affirmative defense, at the conclusion of wife's case-in-chief.

In *Castro*, this court said:

"Where the plaintiff has introduced credible evidence on the essential elements of the cause or causes of action, the trial court should deny the motion [to dismiss] and decline to render any judgment until the close of all the evidence. In order to protect plaintiffs in nonjury cases from premature dismissals and to alleviate the appellate burden of multiple appeals, we adopt the view * * * that motions under ORCP 54 B(2) should be sparingly granted." 51 Or App at 713 (footnote omitted).

Our later decisions have consistently followed that principle. In *McJunkin and McJunkin*, 90 Or App 1, 4, 750 P2d 1164 (1988), for example, we held that "[u]nder Rule 54 B(2), a party is entitled to a dismissal *only* when the opposing party has failed to introduce evidence on the essential elements of the matter to be proved." (Emphasis in original.) *See also Gildow v. Smith*, 153 Or App 648, 652, 957 P2d 199 (1998); *Ranger Ins. Co. v. Globe Feed & Seed Co., Inc.*, 125 Or App 321, 327, 865 P2d 451 (1993). In *Christie and Christie*, 54 Or App 985, 636 P2d 1022 (1981), however, we distinguished *Castro*. In *Christie*, the wife appealed from a judgment denying her motion for modification of the child custody provision

of a dissolution judgment. The husband had called witnesses out of order during the presentation of the wife's case. At the close of the wife's case, the trial court granted the husband's motion to dismiss on the ground that the wife had failed to show a substantial change of circumstances that would warrant modification of the judgment. *Id.* at 987. Although we reversed the trial court's judgment of dismissal on other grounds, we distinguished the procedural posture of the case from the circumstances in *Castro*:

> "At first glance this case appears to be subject to our ruling in *Castro* * * * that a trial court should hear both sides of a controversy in domestic relations cases before passing on a motion to dismiss; however, review of the record reveals that part of [the husband's] case was heard, as he presented witnesses out of order; therefore, our holding in *Castro* does not directly apply here." *Christie*, 54 Or App at 987 n 1.

In some ways, this case resembles the procedural posture in *Christie*. Because wife called husband and Niemeyer as witnesses, substantial portions of husband's case were placed in evidence through their testimony during wife's case-in-chief. Husband testified, in essence, that he was unable to remove the mortgage within the time permitted by the dissolution judgment. In fact, during his opening statement, husband's attorney previewed the testimony that Niemeyer later gave, in support of his argument that husband's failure to timely comply with the judgment was not willful. Here, as in *Christie*, the trial court heard wife's case-in-chief, which, as it happened, included at least some of husband's evidence.

However, there is at least one telling difference between the posture in *Christie* and the circumstances here. Here, as noted, wife established a *prima facie* claim for contempt under the rule stated in *Mikkelsen*. Husband had the burden of proving his inability to timely remove the encumbrance. To the extent that the trial court determined that husband had credibly established his affirmative defense during wife's case, the court decided the issue prematurely. The court's ruling collapsed the parties' evidentiary presentations into wife's case-in-chief. Unlike the circumstances in *Christie*, husband did not actually call any witnesses out of

order during the presentation of wife's case. In fact, husband's attorney declined to question husband during wife's case. There was no reason for wife to expect that husband's affirmative defense would be decided finally in that stage of the proceeding.

We appreciate that it is

> " 'artificial to require the judge, as trier of facts, to first weigh the legal sufficiency of the evidence as though he [or she was] presiding over a jury trial and then to act as trier of those same facts, and that the case should be disposed of as early as possible when it may be done without cutting off the plaintiff's rights.' " *Castro*, 51 Or App at 712 (quoting *Karoblis v. Liebert*, 263 Or 64, 74, 501 P2d 315 (1972)).

However, principles of efficiency cannot override rules of trial procedure that are designed to ensure the fair and orderly administration of justice. Wife established a *prima facie* claim of contempt. The trial court accordingly erred when it prematurely decided husband's affirmative defense during wife's case-in-chief and dismissed the proceeding. It follows that the supplemental judgment awarding husband an additional prevailing party fee must also be vacated.

Judgment of dismissal reversed; supplemental judgment vacated; remanded for further proceedings.