Argued and submitted July 17, affirmed October 2, reconsideration denied December 6, 1985, petition for review denied February 19, 1986 (300 Or 546)

# FEDERAL DEPOSIT INSURANCE CORPORATION,
*Respondent,*

*v.*

# TEMPEST FUGAT et al,
*Appellants.*

## (A8207-04385; CA A32709)

707 P2d 81

Henry Kantor, Portland, argued the cause for appellants. With him on the briefs were Lew E. Delo and Delo, Kantor & Stamm, Portland.

Lynne W. McNutt, Coos Bay, argued the cause for respondent. With him on the brief was McNutt, McNutt & Thrush, Coos Bay.

Before Gillette, Presiding Judge, Joseph, Chief Judge, and Young, Judge.

YOUNG, J.

## YOUNG, J.

Defendants, collectively known as Tempest Fugat,[1] appeal a deficiency judgment after the repossession and resale of collateral. The case was tried to the court, which found that plaintiff's sale of the collateral was commercially unreasonable. Defendants assign as error the trial court's denial of a motion for involuntary dismissal on the ground that plaintiff failed to prove its right to a deficiency. Defendants also argue that there is no evidence to support the trial court's finding as to the fair market value of the collateral and that the court erred in ruling that defendants' affirmative defense of implied retention of the collateral in satisfaction of the debt was inapplicable. We affirm.

Plaintiff is the assignee of Northwest Commerce Bank. In February, 1980, the bank loaned Tempest Fugat $130,097.09 for the purchase of an airplane, and the bank took a security interest in the airplane. Tempest Fugat defaulted, and the bank took possession of the airplane. The bank demanded payment of $130,097.09, plus accrued interest, or the airplane would be sold. The bank appointed Aircraft Acquisitions, Inc., as its sales agent. The airplane was flown over 300 unauthorized hours during the six-month period that Aircraft Acquisition had possession.

Aircraft Acquisition went out of business in May, 1981. The bank went into receivership shortly thereafter. Plaintiff eventually notified defendants that the airplane would be sold at a public sale. In October, 1982, it was sold to plaintiff in an upset bid of $60,000. Plaintiff then sued defendants for the deficiency. Defendants affirmatively defended on the grounds that the sale was commercially unreasonable and that plaintiff had impliedly retained the airplane in satisfaction of the debt.

The trial court ruled that plaintiff was required to plead and prove that the sale was conducted in a commercially reasonable manner. At the close of plaintiff's case, defendants moved that the court rule that plaintiff had failed to prove

---

[1] The corporate defendants H.L.I., Inc., Inter-Agency Associates, Inc., and 4-Site Investment, Inc., use the assumed business name of Tempest Fugat. The individual defendants Robert Imeson, H. Louis Imeson, Jo Mackay Imeson, Martha Imeson and Patrick Imeson are officers, directors and shareholders of the corporations.

that the sale was commercially reasonable. Defendants characterized their motion as one for a "partial directed verdict." We glean from the record and from defendants' arguments on appeal that the purpose of the motion was to obtain a ruling that the sale was unreasonable and that, therefore, the collateral was presumed to be worth the debt. *See All-States Leasing v. Ochs,* 42 Or App 319, 600 P2d 899 (1979). The court declined to rule unless defendants rested their case; defendants chose not to rest.

Defendants then called Hansen, an expert on the valuation of used aircraft. He testified that the optimum time to sell the airplane was within six months of its repossession. He also testified that according to aircraft "Blue Book" figures the retail sales price during that time was $110,000, the inventory wholesale price was $87,300 and the marketable wholesale price was $93,700. Because the airplane had numerous installed options, Hansen increased the retail value by $10,000 and the wholesale value by $8,500 in his valuation.

The court found that the airplane should have been sold within six months of repossession and that its fair market value during that time was the marketable wholesale price testified to by Hansen. The court concluded that plaintiff was entitled to a deficiency equal to the difference between the debt and the fair market value of the airplane, plus interest for six months following repossession.

On default, a secured creditor may repossess and sell the collateral to satisfy the debt. ORS 79.5040(1). Every aspect of the disposition "including the method, manner, time, place and terms must be commercially reasonable." ORS 79.5040(3). If the disposition results in a surplus, the creditor must account to the debtor and, "unless otherwise agreed, the debtor is liable for any deficiency." ORS 79.5040(2). The debtor has the right to recover from the secured party any "loss" caused by the creditor's failure to conduct a commercially reasonable sale. ORS 79.5070.

In *All-States Leasing v. Ochs, supra,* we discussed the effect of the creditor's failure to sell the collateral in a commercially reasonable manner on the creditor's right to recover a deficiency. We first identified three lines of authority which had developed in other jurisdictions:

"(1) The creditor may recover the deficiency subject only to reduction for any damages suffered by the debtor; (the damages being, presumably, the difference between the fair market value of the collateral and the actual sale price) * * *; (2) noncompliance with the statute gives rise to a presumption in favor of the debtor that the collateral was worth the amount of the outstanding debt at the time of default and the debtor is freed from any deficiency unless the creditor proves the fair market value of the collateral was no greater than the sales price * * *; and (3) the creditor loses his right to recover any deficiency." 42 Or App at 328. (Citations omitted.)

We adopted the second alternative, citing as authority *Universal C.I.T. v. Rone,* 248 Ark 665, 453 SW2d 37 (1970), where the secured creditor assigned as error a jury instruction which required the jury to find the sale commercially reasonable before awarding a deficiency. The Arkansas Supreme Court stated:

"The instruction failed to allow for the fact that, when commercial code requirements for disposition of collateral have not been followed, judgment for a secured party can be rendered for the amount by which its deficiency exceeds the amount the collateral reasonably should have brought if code requirements had been followed." 248 Ark at 672.

The case was reversed and remanded to determine the fair market value of the collateral if it had been sold in a commercially reasonable manner. Our statement in *All-States Leasing v. Ochs, supra,* that a commercially unreasonable sale frees the debtor from a deficiency "unless the creditor proves the fair market value of the collateral was no greater than the sales price" is an incorrect interpretation of *Universal C.I.T. v. Rone, supra.* As we stated it, the rule would preclude the recovery of a deficiency if the fair market value is greater than the actual sales price but less than the outstanding debt. We correctly stated the rule in *Ferrous Financial Services Co. v. Wagnon,* 70 Or App 285, 291, 639 P2d 975 (1984), *rev den* 298 Or 470 (1985):

"The effect of the holding in *All-States Leasing* is twofold. First, when the creditor has conducted a commercially unreasonable sale, the debtor is entitled to credit for the fair market value rather than the actual sale price of the collateral in determining the deficiency * * * unless the creditor proves that the fair market value is no greater than the actual sales price. Second, a commercially unreasonable sale gives rise to a

presumption that the collateral was worth the outstanding debt. This means that the creditor has the burden of proving its right to a deficiency. Failure to meet the burden results in exoneration of the debt."

We turn to the specific issues raised in this case. Defendants first argue that the trial court erred in denying their motion for "partial directed verdict," which was made for the purpose of obtaining a ruling that the sale was commercially unreasonable and that, therefore, the collateral was presumed to be worth the debt. Defendants' motion for a "partial directed verdict" at the close of plaintiff's case amounts to a "partial" motion for involuntary dismissal under ORCP 54B(2), which provides:

"After the plaintiff in an action tried by the court without a jury has completed the presentation of plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for judgment of dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment of dismissal against the plaintiff or may decline to render any judgment until the close of all of the evidence."

■ Even assuming that there is such a thing as a "partial" motion for involuntary dismissal, the trial court properly denied the motion. In *Castro and Castro,* 51 Or App 707, 713, 626 P2d 950 (1981), we adopted the view that motions for involuntary dismissal should be granted only in unusually clear cases. This is not "an unusually clear case." The trial court held, and we agree, that plaintiff's evidence raised a question of fact as to whether the sale was commercially reasonable. The trial court properly denied defendant's motion.

■ Defendants' second assignment of error is that the trial court erred in finding that the fair market value of the airplane was $102,200 at the time it should have been sold. Defendants argue that the finding was erroreous because (1) plaintiff did not introduce any evidence of the airplane's value, (2) the court should not have considered evidence of the airplane's value *after* repossession and (3), even if the relevant time was after repossession, there was no evidence that the airplane was worth $102,200. We disagree with all three arguments.

First, plaintiff introduced into evidence, without objection, two written appraisals of the airplane's value. As to defendants' third argument, their own expert testified that the airplane had a fair market value of $102,200 at the time it should have been sold.

Defendants' second argument requires discussion. It is esssentially that the proper time to determine fair market value is as of the date of repossession, not the date of resale. We disagree. The proper time to determine fair market value is as of the date of resale, *unless* the creditor fails to sell the collateral within a commercially reasonable time. *See Ferrous Financial Services Co. v. Wagnon, supra,* 70 Or App at 292. If the sale is made after a commercially unreasonable time, the trier of fact must first determine when the collateral should have been sold and then determine the fair market value of the collateral as of that date. In this case, the evidence supports the trial court's determination that the airplane should have been sold within six months of repossession and that its fair market value was $102,200 during that time. There was no error.

We turn to defendants' third assignment of error. They argue that the trial court erred in granting plaintiff a deficiency, because the evidence established that plaintiff had impliedly retained the airplane in satisfaction of the debt. ORS 79.5050(2) provides, in part:

> "In any other case involving consumer goods or any other collateral a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation. Written notice of such proposal shall be sent to the debtor if the debtor has not signed after default a statement renouncing or modifying the debtor's rights under this subsection."

The question whether a creditor's election to retain collateral in satisfaction of the debt may be implied by conduct has not been addressed in Oregon. Jurisdictions that have addressed the question have answered it differently. The Supreme Court of Nebraska discussed the various approaches:

> "One approach holds that an election under [UCC] § 9-505(2) is impossible absent the service of notice on the debtor of the secured party's intent to retain the collateral in payment of the debt * * *. A second approach is that an

election can be implied from an unreasonably prolonged retention of the collateral by the secured party and that the determination of what constitutes an unreasonable period of time is a question for the trier of fact * * *. The third approach requires that the secured party manifest an intent to accept the collateral in satisfaction of the obligation by some conduct other than an undue delay in disposing of the collateral." *Schmode's, Inc. v. Wilkinson,* 219 Neb 209, 361 NW2d 557, 558 (1985).

■    Defendants argue that the 22-month delay between repossession and sale, coupled with the 300 hours of unauthorized use by the sales agent, manifested plaintiff's intent, as a matter of law, to retain the airplane in satisfaction of the debt. Assuming that an unreasonable delay in selling repossessed collateral may imply a creditor's intent to retain the collateral in satisfaction of the debt under ORS 79.5050(2), we are not required to decide that question in this case, because the evidence does not establish, as a matter of law, an implied retention. It is unnecessary for us to decide between the remaining two lines of authority referred to in the Nebraska case, because the result in this case is the same under both. Plaintiff did not give written notice of intent to retain the collateral in satisfaction of the debt. The trial court found, as a matter of fact, that plaintiff did not manifest an intent to retain the collateral. There is evidence to support that finding and we are bound by it.

Affirmed.