Argued and submitted July 2, affirmed August 14, 2002

# ALLCO ENTERPRISES, INC.,
dba Allco Leasing,
an Oregon corporation,
*Respondent,*

*v.*

# GOLDSTEIN FAMILY LIVING TRUST,
dba Sandwich Express,
*Appellant,*

*and*

Deborah G. HILL
and Arthur J. Hill,
*Defendants.*

9808-06065; A114012

51 P3d 1275

Steven G. Marks argued the cause and filed the brief for appellant.

No appearance for respondent.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.

BREWER, J.

## BREWER, J.

■■ Defendant Goldstein Family Living Trust appeals from a money judgment and supplemental attorney fee judgment entered in plaintiff's favor after a bench trial.[1] Although defendant raises five assignments of error, only three require extended discussion. We review the trial court's findings of fact for any evidence to support them, *Illingworth v. Bushong*, 297 Or 675, 694, 688 P2d 379 (1984), and its legal conclusions for errors of law. We affirm.

Plaintiff was the lessor and defendant and Deborah G. Hill and Arthur J. Hill (the Hills), were the lessees under several restaurant equipment leases involving sandwich shops operated by the Hills.[2] Two of those leases are pertinent to this action. The first is the Keizer lease. Deborah Hill executed that lease on her own behalf and as an authorized agent for defendant. The second is the Tigard lease, which Deborah Hill also personally signed and purported to execute on defendant's behalf. The lessees defaulted in making payments on both leases, plaintiff took possession of the leased equipment, had it sold at an auction, and then brought this action against defendant and the Hills to recover the difference between the total unpaid balance of payments under the leases, less the net proceeds of the equipment sold. Plaintiff received $14,660.84 in net proceeds from the auction of the equipment pertaining to both leases. It applied $5,284.05 to eliminate the debt owed on the Tigard lease, and it applied the remaining proceeds, $9,376.79, first to late charges ($481.35) and then to unpaid lease payments on the Keizer lease. Plaintiff alleged in its complaint that the total unpaid balance on the Keizer lease before the auction had been $16,987.74, but it sought in its prayer for relief, after applying the remaining proceeds from the auction, a judgment against defendant for $10,350.35.[3]

---

[1] Plaintiff did not appear on appeal.

[2] The Hills were codefendants in the action, and the judgments entered against defendant also were entered against them. However, the Hills have not appealed. Accordingly, we refer only to the Goldstein Family Living Trust as "defendant" throughout this opinion.

[3] The complaint revealed an arithmetical discrepancy. If, as alleged in the complaint, the unpaid balance on the Keizer lease was $16,987.74, deduction of the net

Defendant raised several defenses in its pleadings and at trial. We discuss only those defenses that are relevant on appeal. First, defendant contended that, although it was a party to the Keizer lease, Deborah Hill lacked authority to bind it to the Tigard lease. Thus, defendant argued, it could not be held liable for any deficiency between the total unpaid balance on the Tigard lease and the net proceeds from the auction pertaining to that lease.

Second, defendant asserted that the leases were not true leases but, instead, actually were security agreements subject to Article 9 of the Uniform Commercial Code (UCC), including the provisions of Article 9 that require a commercially reasonable disposition of collateral following the debtor's default. *See* ORS 79.0610; ORS 79.0627.

Third, defendant asserted that, irrespective of whether the leases were true leases, their own terms required plaintiff to make a commercially reasonable disposition if it elected to dispose of the equipment after default.

Fourth, defendant asserted as an affirmative defense that the sale of the equipment was commercially unreasonable in several respects. At trial, defendant offered expert testimony by an auctioneer, Van Gorden, who opined that the disposition was commercially unreasonable, because (1) plaintiff's auctioneer failed to segregate the proceeds of equipment sold pursuant to the Keizer lease from the proceeds of equipment pertaining to the Tigard lease; (2) plaintiff's auctioneer failed to produce documentation of the scope, content, cost, or a list of recipients, of advertisements for the auction, although the auctioneer charged $1,500 for advertising expenses; (3) the auctioneer failed to identify the purchasers participating in the auction; Van Gorden was especially concerned that, if the auctioneer had purchased equipment at the auction without disclosing its participation, it would have violated statutory prohibitions; (4) the clerking sheets documenting the sale of the equipment were not in

auction proceeds allocated to that lease, $8,895.44 ($9,376.79 minus $481.35), should have yielded a prayer for judgment in the amount of $8,092.30. The difference between that figure and the judgment amount requested by plaintiff— $10,350.35—will be discussed further below.

numbered order and did not identify the owner of the equipment; and (5) the cumulative effect of the foregoing irregularities prevented recovery of "the highest possible price" for the goods sold and thus, the sale was not commercially reasonable. In addition, defendant produced evidence that plaintiff had failed to remove and dispose of certain equipment from the Tigard store and that plaintiff had attempted to allocate the auction proceeds first to the Tigard lease and then, after having reduced that lease balance to zero, had applied the remaining proceeds to the Keizer lease.

In response, plaintiff took the position that the leases were true leases and, thus, were governed by ORS chapter 72A, which, plaintiff asserted, does not require the commercially reasonable disposition of leased property by the lessor upon default by the lessee. Plaintiff offered no countering expert testimony regarding the commercial reasonableness of the disposition, but plaintiff's counsel did cross-examine defendant's expert witness.

Fifth, defendant asserted that, because the disposition was commercially unreasonable, a presumption arose that the equipment was worth the outstanding debt, plaintiff had failed to rebut the presumption, and, therefore, plaintiff was not entitled to a deficiency judgment. *See Federal Deposit Ins. Corp. v. Tempest Fugat*, 75 Or App 536, 540-41, 707 P2d 81 (1985), *rev den* 300 Or 546 (1986) (discussing consequences of a secured creditor's failure to effect a commercially reasonable disposition of collateral).

Sixth, defendant objected to the trial court's consideration of plaintiff's assertion at trial that the amount of the preauction unpaid balance on the Keizer lease was $19,727.14, rather than $16,987.74 as alleged in the complaint.

After the conclusion of trial, the court made the following written findings:

"1.   The agreement in question was a true lease.

"2.   Deborah Hill did not have real or apparent authority to bind [defendant] on the Tigard lease.

"3.   The sale conducted was commercially reasonable.

"4. Auction proceeds cannot be segregated by lease.

"5. There is no accounting for the sale advertising costs."

The court then entered a judgment awarding plaintiff $4,316.30, after deducting one-half of the auction advertising costs. Although the court did not elaborate on its calculations, it appears to have derived the judgment amount by starting with the asserted balance owed on the Keizer lease, $19,727.14, then, consistently with its finding that the auction proceeds could not be segregated by lease, deducting the *entire* net auction proceeds, $14,660.84, yielding a subtotal of $5,066.30. From that figure, the court deducted one-half of the auction advertising expenses, $750, resulting in a net judgment for plaintiff in the amount of $4,316.30. The court also entered a supplemental judgment for attorney fees in plaintiff's favor in the sum of $19,628. Defendant appeals from both judgments.

On appeal, defendant renews the arguments it made at trial with respect to the issues on which it did not prevail. However, we need not consider each of them. In particular, it is not necessary to decide whether the Keizer lease was a true lease or a security agreement and what, if any, legal consequences flow from that distinction as respects the existence and contours of a commercially reasonable disposition requirement. Plaintiff's president acknowledged at trial that the leases included provisions requiring plaintiff to dispose of the leased property in a commercially reasonable manner. Neither party asserted that a different standard for commercial reasonableness would govern the interpretation of the leases here from that provided under ORS 79.0610 and other provisions of Article 9. Nor do we discern a difference. Therefore, as may be necessary, we analyze the lease requirement in accordance with commercial reasonableness standards under Article 9.

■ We turn to defendant's assertion that the trial court erred in finding that the sale of the equipment was commercially reasonable. We may not disturb that finding unless we can affirmatively say that "no evidence" supports it. *Illingworth*, 297 Or at 694. Recognizing the difficulty posed by our standard of review, defendant argues that no evidence supports the trial court's finding, because the court was

bound to accept the "uncontradicted credible" opinion of defendant's expert that the disposition was commercially unreasonable. *See Can-Key v. Industrial Leasing*, 286 Or 173, 181, 593 P2d 1125 (1979) (recognizing an exception to the general rule that the trier of fact is the exclusive judge of witness credibility where uncontradicted testimony is "clear and convincing," "not incredible," and "so plain and complete that disbelief of the story could not reasonably arise in the rational process of an ordinary intelligent mind"). Defendant is mistaken.

■ We begin with a brief discussion of the statutory framework for the requirement that a secured party's disposition of collateral be commercially reasonable. ORS 79.0610(2) provides:

> "Every aspect of a disposition of collateral, including the method, manner, time, place and other terms, must be commercially reasonable. If commercially reasonable, a secured party may dispose of collateral by public or private proceedings, by one or more contracts, as a unit or in parcels, and at any time and place and on any terms."

ORS 79.0627 more specifically sets forth standards for determining whether a disposition is commercially reasonable. It provides, in part:

> "(1)   The fact that a greater amount could have been obtained by a collection, enforcement, disposition or acceptance at a different time or in a different method from that selected by the secured party is not of itself sufficient to preclude the secured party from establishing that the collection, enforcement, disposition or acceptance was made in a commercially reasonable manner.
>
> "(2)   A disposition of collateral is made in a commercially reasonable manner if the disposition is made:
>
> "(a)   In the usual manner on any recognized market;
>
> "(b)   At the price current in any recognized market at the time of the disposition; or
>
> "(c)   Otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition."

The UCC does not further define the term "commercially reasonable" but, instead, leaves the issue to case-by-case determination on the facts. *Tempest Fugat*, 75 Or App at 540-41.

Van Gorden's testimony that the disposition of the equipment was commercially unreasonable was not so clear, convincing, plain, and complete that by rational process an intelligent mind could not reject it. A sampling of relevant uncertainties suffices to demonstrate the point.

First, defendant offered no direct evidence that the equipment was sold for less than its value in any recognized market. Second, there was evidence that defendant's co-lessee, Deborah Hill, was aware of the sale, attended it, and even played a role in selecting the auctioneer. She testified that as many as 25 potential bidders may have attended the auction. Third, suspicion aside, there is no evidence that the auctioneer actually bid on or purchased equipment at the auction.

Fourth, defendant's complaint that property used in the Tigard store was not accounted for and that the auctioneer failed to segregate the equipment sold "by lease" is less important than defendant urges. The trial court found that defendant was not liable on the Tigard lease and, thus, it was not entitled to an accounting for any equipment subject to that lease. Moreover, the court allocated all of the auction proceeds to the Keizer lease account. Thus, if anything, the court gave defendant a windfall by crediting against the Keizer lease balance (for which defendant was liable) proceeds of at least some equipment subject to the Tigard lease (as to which defendant had no obligation or interest).

Fifth, the complaint about undocumented advertising costs, unusual clerking sheets, and other paperwork irregularities, although relevant, was not compelling. There was no evidence that the auctioneer did not incur the claimed $1,500 advertising cost, only that it was inadequately documented. Van Gorden apparently did not contact the auctioneer to verify whether the costs actually were incurred, the identity of the purchasers, or to satisfy any of his other concerns, nor did defendant subpoena the auctioneer to confront him with its challenges.

In short, although defendant's evidence raised legitimate questions about the auction, it did not compel a finding that the disposition was commercially unreasonable. The trial court, because of its own apparent concerns about the strength of plaintiff's proof, deducted half of the claimed advertising expenses in setting the judgment amount. Defendant's evidence did not require more.

■ We turn briefly to defendant's argument that the court erred "by refusing to bind [plaintiff] to its claim for damages in its complaint." Defendant's argument is not that the complaint had to be amended to reflect the true amount of damages sought but, rather, that defendant was bound by judicial admission to the preauction lease balance alleged in the body of the complaint. *See Yates v. Large*, 284 Or 217, 223, 585 P2d 697 (1978) (holding that a statement of fact in a pleading is normally a judicial admission that is binding on a party).

The short answer to defendant's argument is that the allegation of the preauction lease balance was merely a step in the calculation of the damages claimed in the prayer of plaintiff's complaint. The evidence at trial showed that those damages were calculated based on a higher lease balance, $19,727.14. Thus, even though the complaint alleged that the lease balance was $16,987.74, that balance was inconsistent with the damages pleaded. Defendant does not explain how the allegation of the lower balance would have precluded plaintiff from offering evidence of damages in the pleaded amount. No case we have found extends the judicial admission doctrine to circumstances such as these, where an inconsistency between pleaded subordinate and ultimate facts is asserted to preclude the pleader from proving the ultimate fact at trial. We decline to extend it here.

■ Moreover, evidence that enabled the trial court to arrive at the higher preauction lease balance and, thus, the amount of damages pleaded, was received at trial without objection. Although defendant did challenge—both at trial and after trial—plaintiff's attorney's *assertions* that the lease balance was $19,727.14, defendant never demonstrated that it was unfairly prejudiced by the discrepancy in plaintiff's complaint. Despite defendant's objections, the trial court

awarded judgment in accordance with evidence that established the higher lease balance. Accordingly, even if a pleading amendment was required to obviate a judicial admission, it is deemed to have been made to conform to the evidence received. ORCP 23 B; *Glen L. Olson, Inc. v. R.L. Thompson Enter., Inc.*, 88 Or App 309, 312, 745 P2d 1227 (1987), *rev'd on other grounds* 306 Or 320, 759 P2d 1087 (1988) (holding that, under ORCP 23 B, a trial court may *sua sponte* allow amendments of pleadings to conform to the evidence "when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice" the party's claim or defense).

■     Finally, we address defendant's objection to the award of attorney fees to plaintiff pursuant to the attorney fee provision in the Keizer lease. Defendant contends that, because it established that it was not a party to the Tigard lease, and, because plaintiff failed in its attorney fee statement to segregate services related to the Keizer lease from services pertaining to the Tigard lease, plaintiff should have recovered no more than half of the amount of fees claimed. Alternatively, defendant argues that it was entitled to recover attorney fees incurred in successfully defending against liability under the Tigard lease. Defendant relies primarily on cases in which opposing parties each prevailed against the other on different claims in a single action. *See, e.g.*, *Wilkes v. Zurlinden*, 328 Or 626, 984 P2d 261 (1999). However, those cases are inapposite here. Although plaintiff's claim involved both leases, it asserted only one claim against defendant.[4] Therefore, the trial court was not required to consider the legal principles relating to multiple and offsetting attorney fee awards or the segregation of amounts sought among different claims.

■     Ultimately, the trial court's decision was predicated on an exercise of discretion in setting the amount of fees. *See Stocker v. Keith*, 178 Or App 544, 547, 38 P3d 283 (2002)

---

[4] Defendant's position appears to be that plaintiff asserted separate claims with respect to each lease. Whether or not plaintiff could have or should have pleaded separate claims is beside the point. It did not do so, and defendant did not move to strike the complaint on the ground that it contained more than one claim not separately stated. *See* ORCP 16; ORCP 21 E.

(explaining that this court reviews a trial court's decision respecting attorney fees for abuse of discretion unless the decision is predicated on a legal conclusion). Even though plaintiff recovered less than half of the amount of damages it sought, it prevailed on its claim against defendant. Defendant does not assert that it made an offer of compromise that could have cut off plaintiff's right to recover additional attorney fees had it been rejected. *See* ORCP 54 E. Instead, defendant vigorously defended the action from start to finish. Under the circumstances, the trial court did not abuse its discretion in awarding plaintiff the entire amount of attorney fees sought.

Affirmed.