No. 591 August 28, 2024 529

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

SUMMIT RWP, INC.,
dba Summit Reconstruction and Restoration,
an Oregon corporation,
*Plaintiff-Respondent,*
*and*

Cameron ELLIS,
an individual,
*Plaintiff,*

*v.*

David HALLIN,
*Defendant-Appellant,*
*and*

Michael HALLIN,
an individual; and
Prestige NW Construction Services, LLC,
a Washington limited liability company,
*Defendants.*

Washington County Circuit Court
21CV20448; A180591

Andrew Erwin, Judge.

Submitted April 22, 2024.

Elizabeth Farrell filed the briefs for appellant.

Donald J. Koehler, II, filed the brief for respondent.

Before Shorr, Presiding Judge, Mooney, Judge, and Pagán, Judge.

SHORR, P. J.

General judgment reversed and remanded for further proceedings consistent with this opinion; otherwise affirmed. Supplemental judgment affirmed.

**SHORR, P. J.**

Defendant-employee David Hallin appeals from a general judgment and a supplemental judgment entered after a civil bench trial. Following that trial, the court ruled (1) for plaintiff-employer Summit RWP, Inc. on its claim for breach of contract, (2) for defendant on his counterclaim under ORS 652.140 for plaintiff's failure to timely pay wages, but the court cut its statutory penalty award to defendant and denied defendant's attorney fees despite defendant prevailing on the underlying claim, and (3) for plaintiff on defendant's second counterclaim for breach of contract for unreimbursed work expenses.[1] Defendant raises six assignments of error. As we explain below, we reject all of those assignments except for defendant's third and fourth assignments of error in which he contends that the court erred in reducing the statutory penalty award under ORS 652.150 and denying his petition for attorney fees under ORS 652.200. For the following reasons, we reverse and remand the general judgment for further proceedings on defendant's claim for a statutory penalty for plaintiff's failure to timely pay wages and for defendant's request for his attorney fees, and we affirm the supplemental judgment regarding plaintiff's attorney fees.

DENIAL OF DEFENDANT'S ORCP 54 B(2) MOTION

We begin by briefly addressing defendant's first assignment of error. Defendant argues that the trial court erred in denying his ORCP 54 B(2) motion for involuntary dismissal for two reasons: (1) the court erroneously applied the directed verdict standard when ruling on that motion, and (2) the trial court's ruling was based on testimony that was either inaccurate, speculative, or contradictory.

We do not address defendant's first argument on its merits because he did not preserve it, as required by ORAP 5.45.[2] During trial, the court asked, "I take your argument

---

[1] The trial court entered stipulated judgments of dismissal to Cameron Ellis, owner and president of Summit, RWP, Inc., Michael Hallin (defendant's son) in his personal capacity, and Prestige NW Construction Services LLC. Those parties are not part of this appeal.

[2] ORAP 5.45(1) provides, in relevant part, "No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court *** provided that the appellate court may, in its discretion, consider a plain error."

to be one for directed verdict in this matter?" Defendant's counsel responded, "[y]es," and offered no objection. *See State v. Clemente-Perez*, 357 Or 745, 752, 359 P3d 232 (2015) ("To adequately preserve an issue, a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." (Internal quotation marks omitted.)). Furthermore, we do not consider plain error review because defendant does not request it. *State v. Ardizzone*, 270 Or App 666, 667, 349 P3d 597, *rev den*, 358 Or 145 (2015).

We also reject defendant's second argument. The substance of defendant's reasoning is that, in denying the motion, the court credited evidence that favored plaintiff despite contradictory or competing evidence in the record. Yet, that is precisely what we are required to do when reviewing the denial of an ORCP 54 B(2) motion: we must view the evidence and all reasonable inferences that can be made from it in the light most favorable to the plaintiff to determine whether there is sufficient evidence to establish a *prima facie* case. *Marlow v. City of Sisters*, 281 Or App 462, 465, 383 P3d 908 (2016). In light of that standard, we conclude that the trial court did not err in denying the motion.

FACTS GIVING RISE TO THE DISPUTE

We turn to the facts necessary to resolve defendant's remaining assignments of error. "We review the trial court's findings of fact for any evidence to support them," *Allco Enterprises v. Goldstein Family Living Trust*, 183 Or App 328, 330, 51 P3d 1275 (2002), and we "defer to the court's explicit and implicit findings of fact if they are supported by evidence in the record," *Golick v. CBS Corp.*, 306 Or App 202, 213, 472 P3d 778 (2020). We state the facts consistently with that standard.

Defendant signed an employment agreement with plaintiff that contained a nonsolicitation provision that prohibited defendant from "[i]induc[ing], or attempt[ing] to influence, any employee of the Company to terminate employment with the Company or to enter into any

employment *** with any *** firm or corporation." That employment agreement contained no provision setting out a bonus or commission structure, but defendant informally received a quarterly bonus until the parties formally modified the agreement in August 2020 to include a two percent quarterly bonus until January 7, 2021. Defendant also received an employee handbook shortly after being hired by plaintiff that contained a provision that allowed employees to receive reimbursements for company expenses. That provision required employees to submit written reimbursement requests within two weeks of incurring the expense.

Plaintiff terminated defendant's employment on April 16, 2021. Within 24 hours of being terminated, defendant received a phone call on his personal cell phone from plaintiff's employee, Venegas. Shortly thereafter, Venegas quit working for plaintiff and began working for defendant's son's competing company, Prestige NW Construction Services, LLC (Prestige). Around that time, defendant spoke to two more of plaintiff's then-employees, Juan Zarate and Miguel Zarate, several times over the course of about a month. Shortly after those exchanges, both Juan and Miguel quit working for plaintiff and began working for Prestige. At one point, when referring to three of plaintiff's employees, defendant sent a text that read, "I hired three Summit people today because I can and not get sued over it. FUCK [the owner and president of Summit RWP, Inc.]."

When plaintiff terminated defendant's employment, defendant had already earned a fourth quarter 2020 bonus that had not been paid because of administrative staffing issues that precluded plaintiff from calculating the amount of the bonus. But when defendant's counsel asked Ellis, plaintiff's owner and president, whether an employee that was subject to receipt of bonuses would receive those bonuses after termination, Ellis replied, "No?" and explained, "I feel like if you are messing up your job so badly that you got fired that you shouldn't be bonused for it. And because they're discretionary."

Also, after termination of employment, defendant submitted several reimbursement requests for work-related expenses that had been incurred as many as two years

earlier. Plaintiff's controller later testified that employees on occasion were reimbursed for expenses that were submitted more than two weeks after the expenses were incurred. But the controller also testified that no employees had been reimbursed for expenses submitted as late as defendant's— eleven months to two years from the time that they were incurred.

　　Plaintiff ultimately filed a lawsuit against defendant, alleging that defendant had breached the non-solicitation provision in his employment contract and intentionally interfered with an economic relationship when he solicited plaintiff's employees to work for Prestige.[3] Within 30 days of the filing of the complaint, defendant sent plaintiff a demand letter requesting $36,000 ($18,000 each for the two unpaid quarterly bonuses) and counterclaimed for unpaid wages under ORS 652.140.[4] Defendant also counterclaimed for breach of contract, alleging that plaintiff failed to reimburse him for expenses incurred during his employment.

　　As recounted at the outset of this opinion, the litigation proceeded to a bench trial. Following that trial, the court ruled (1) in favor of plaintiff on its claim for breach of the non-solicitation agreement, awarding $60,912.50 in attorney fees to plaintiff, (2) in favor of plaintiff on defendant's counterclaim for breach of contract for plaintiff's failure to reimburse defendant's expenses, and (3) in favor of defendant on his counterclaim under ORS 652.140 for unpaid wages, but the court reduced the statutory penalty under ORS 652.150 and denied defendant's attorney-fee award.

## THE RECORD SUPPORTS THE TRIAL COURT'S FINDINGS OF FACT

　　Turning to defendant's second assignment of error, he argues that the trial court erred when it made various

---

[3] The trial court dismissed plaintiff's intentional interference with an economic relationship claim, and neither party assigns error to that decision on appeal.

[4] There are two quarterly bonuses in dispute, defendant's fourth quarter 2020 bonus and his first quarter 2021 bonus. We discuss the fourth quarter bonus further below. The trial court ruled that defendant was not entitled to a first quarter 2021 bonus. Defendant does not develop any legal argument on appeal regarding the first quarter bonus, so we do not address it.

findings of fact that were "unsupported by any facts on the record and/or are directly contrary to the undisputed facts."[5] As previously noted, we review the trial court's findings of fact for any evidence to support them. *Allco Enterprises*, 183 Or App at 330.

The trial court found that defendant intended to be bound by the employment agreement. The record reflects that defendant signed the employment agreement, which contained a provision that reads, in relevant part, "intending to be legally bound, the Employee and the Company mutually promise and agree as follows." The court also found that defendant induced plaintiff's employees to leave their employment with plaintiff and to work for Prestige instead. Defendant's phone records show repeated contacts with plaintiff's then-current employees who began working at Prestige shortly after he contacted them. Defendant's text communications show his contempt for plaintiff's owner and president and his desire to hire plaintiff's employees away to work for Prestige. Having reviewed the record, we conclude that the trial court did not err because its factual findings are supported by "any evidence" in the record.

## DEFENDANT'S COUNTERCLAIM FOR EXPENSE REIMBURSEMENT

In his fifth assignment of error, defendant contends that the trial court erred in entering a verdict in favor of plaintiff on defendant's counterclaim for breach of contract for unreimbursed expenses. Defendant argues that the trial court erred as a matter of law because (1) plaintiff was unjustly enriched and (2) plaintiff's conduct constituted a waiver of the employment contract and its deadline for expense reimbursements. Defendant did not argue an unjust enrichment theory to the trial court, so we will not consider that argument on appeal.[6] *See* ORAP 5.45(1) ("No

---

[5] Defendant argues that the trial court erred by "holding that [defendant] breached its Employment Agreement with Summit" but makes no argument contesting the court's legal conclusion or reasoning. Rather, we understand defendant to contest the factual findings underlying that conclusion, which we review for any evidence. *Allco Enterprises*, 183 Or App at 330.

[6] At the very end of closing argument, the court asked, "[I]s there a reason why there wasn't a claim for *quantum meruit* made in this case[?]" Defense counsel responded, "Yeah, I guess I'm just not prepared to answer that question[.]"

matter claimed as error will be considered on appeal unless
\* \* \* preserved in the lower court

.\* \* \*."); *see also John Hyland Const., Inc. v. Williamsen &
Bleid, Inc.*, 287 Or App 466, 473, 402 P3d 719 (2017) ("Lack
of compliance with ORAP 5.45 may render a claim of error
unreviewable on appeal.").[7]

As to defendant's waiver argument, he raised that
issue during closing argument before the trial court in a
bench trial in a manner that presented the equivalent of
a motion for directed verdict, which is sufficient for our
review. *Peiffer v. Hoyt*, 339 Or 649, 658, 125 P3d 734 (2005).
Accordingly, we again view the evidence in the light most
favorable the nonmoving party, affording the nonmoving
party every reasonable inference that can be drawn from
that evidence. *Kelley v. Washington County*, 303 Or App 20,
21, 463 P3d 36 (2020).

Defendant argues that plaintiff waived the two-week
requirement for submitting reimbursement requests by reg-
ularly accepting reimbursement requests from other employ-
ees that were submitted after the two-week deadline and not
communicating to employees that the deadline was strictly
enforced. *See Fisher v. Tiffin*, 275 Or 437, 442, 551 P2d 1061
(1976) ("[W]e believe that the plaintiff's actions in accepting
late payments consistently \* \* \* without ever notifying the
defendant \* \* \* he was going to insist on payments strictly
in accordance with the contract's terms, were sufficient to
demonstrate a waiver of the time provisions of the contract
despite the contract's language to the contrary."). But "[w]
hether a waiver has occurred depends on the particular cir-
cumstances of each case." *Moore v. Mutual of Enumclaw Ins.
Co.*, 317 Or 235, 240, 855 P2d 626 (1993); *see also Widing
et al v. Jensen, Real Estate Com.*, 231 Or 541, 548, 373 P2d
661 (1962) ("There is, however, no absolute test for the ascer-
tainment of waiver or extension of time; such is a question

_____

[7] Defendant requests plain error review for this assignment of error.
Whatever the merits of the underlying claim, we decline to consider any claimed
error because it is not "obvious" that the trial court had to find for him on an
unjust enrichment claim that was neither alleged in the complaint nor requested
by counsel, following a specific inquiry by the court, during closing argument. *See
State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990) (stating that, for an error to
be plain, the legal point must be obvious).

of fact for the determination of the court."). The trial court concluded that a waiver had not occurred. We agree.

"Waiver is the intentional relinquishment or abandonment of a known right or privilege." *Moore*, 317 Or at 240. Plaintiff's controller testified that plaintiff would occasionally reimburse employees for expenses submitted past the two-week deadline. The controller explained that plaintiff wanted to be "flexible and lenient with people and, you know, be reasonable." The controller also testified that the two-week deadline for submitting expense reports was integral to plaintiff's billing cycles and calculating the profit margins (and subsequently, the bonus amounts) on each job. The expenses defendant requested from plaintiff after termination range from eleven months to over two years old—and were thus not factored into plaintiff's normal billing cycles or profit/bonus calculations. Furthermore, plaintiff's records indicate that it never reimbursed an expense submitted that long or anywhere near that long after the two-week deadline. Those facts, taken together, indicate that plaintiff might have only ever intended to use its discretion to *extend* the two-week deadline in certain circumstances not present here but not to abandon the deadline altogether. Regardless, the issue of waiver was ultimately one of fact for the trial court and not an issue that the trial court had to decide in defendant's favor. The trial court did not err in ruling for plaintiff on defendant's second counterclaim for breach of contract because the court did not have to conclude as a matter of law that plaintiff waived the two-week deadline for submitting expense reports.

## THE STATUTORY PENALTY AWARD

Turning to defendant's third assignment of error, he argues that the court erred in its award of a statutory penalty under ORS 652.150 when it calculated the penalty for nonpayment of his fourth quarter 2020 bonus and then reduced it to punish him for making a "wild guess" as to the amount of the unpaid wages requested in his demand letter to plaintiff. The court awarded defendant half of his unpaid bonus as a penalty. It is unclear precisely how the trial court reached that amount. It appears that the court might have computed the statutory penalty by awarding defendant his

hourly rate at eight hours a day for each day of nonpayment, then capped that award at 100 percent of the unpaid bonus. *See* ORS 652.150(1) ("the wages or compensation of the employee shall continue from the due date thereof at the same hourly rate for eight hours per day until paid"); ORS 652.150(1)(a) ("In no case shall the penalty wages or compensation continue for more than 30 days from the due date[.]"). It is undisputed that the court then cut that amount in half after concluding that defendant failed to give reasonable notice of the wage claim under ORS 652.150. As we discuss below, we conclude that the trial court erred when it cut its penalty award.

When we review the trial court's interpretation of a statute—as we do here—we review for legal error. *Rider v. Carranza*, 306 Or App 616, 618, 475 P3d 467 (2020). Defendant argues that there is no basis in the text of ORS 652.150 for judicial discretion to modify the penalty. We agree. Text and context must be considered first in our statutory analysis. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009).

ORS 652.150 provides, in part:

> "(1) Except as provided in subsections (2) and (3) of this section, if an employer willfully fails to pay any wages or compensation of any employee whose employment ceases, as provided in ORS 652.140 and 652.145, then, as a penalty for the nonpayment, the wages or compensation of the employee shall continue from the due date thereof at the same hourly rate for eight hours per day until paid or until action therefor is commenced."

The statute further provides that "[i]n no case shall the penalty wages or compensation continue for more than 30 days from the due date." ORS 652.150(1)(a).

The legislature's statement that the penalty "shall" continue indicates the legislature's intent to not confer discretion upon the court to order a lesser amount. *Friends of Columbia Gorge v. Columbia River (S055915)*, 346 Or 415, 426-27, 212 P3d 1243 (2009) ("[I]n the statutory context, in ordinary usage, 'shall' create[s] a mandatory duty, while 'may' creates only authority to act." (Second brackets in original; internal quotation marks omitted.)). Nor is there

any other provision under ORS 652.150 that would indicate otherwise. Under the statute and absent any other applicable exception, and the parties identify none, the penalty shall continue "until paid or until action therefor is commenced" up to a maximum of thirty days.

Plaintiff cross-assigns error to the trial court's award of a statutory penalty to defendant, arguing that defendant is not entitled to recover any penalty because (1) defendant was not entitled to his fourth quarter 2020 bonus, (2) plaintiff did not "willfully" fail to pay defendant's 2020 bonus, and (3) defendant provided no evidence to establish the due date for defendant's 2020 bonus under ORS 652.150(1). First, the trial court found that both parties stipulated that they had entered into a written modification of the employment agreement that granted defendant a two percent bonus until January 7, 2021, for the fourth quarter of 2020. The record supports that finding, so we defer to the trial court, as we must. *Golik*, 306 Or App at 213. Defendant was terminated on April 16, 2021, well after the time that he had earned his bonus.

Turning to plaintiff's second argument, "the word 'willful' does not necessarily cast blame or implicate malice; it merely indicates that the act or omission was purposeful and not the product of inadvertence." *Young v. State of Oregon*, 340 Or 401, 409, 133 P3d 915 (2006). There was evidence that defendant had not been paid his fourth quarter 2020 bonus at the time of his termination due to plaintiff's administrative difficulties. Regardless, the record supports the trial court's determination that plaintiff willfully or "purposefully" withheld defendant's bonus after his termination. Notably, plaintiff's owner and president testified that he believed "if you are messing up your job so badly that you got fired that you shouldn't be bonused for it."

Finally, plaintiff's argument that defendant's fourth quarter 2020 bonus never became due and payable is foreclosed by ORS 652.140(1), which states that "[w]hen an employer discharges an employee or when employment is terminated by mutual agreement, all wages earned and unpaid at the time of the discharge or termination become

due and payable not later than the end of the first business day after the discharge or termination."

We conclude that the trial court erred when it reduced the penalty award.[8]

## ATTORNEY FEES FOR DEFENDANT'S UNPAID WAGES CLAIM

In defendant's fourth assignment of error, he contends that the trial court erred in denying his request for attorney fees under ORS 652.200(2) despite prevailing on his underlying wage claim.

ORS 652.200(2) provides:

"In any action for the collection of wages, if it is shown that the wages were not paid for a period of 48 hours, excluding Saturdays, Sundays and holidays, after the wages became due and payable, the court shall, upon entering judgment for the plaintiff, include in the judgment, in addition to the costs and disbursements otherwise prescribed by statute, a reasonable sum for attorney fees at trial and on appeal for prosecuting the action, unless it appears that the employee has willfully violated the contract of employment or unless the court finds that the plaintiff's attorney unreasonably failed to give written notice of the wage claim to the employer before filing the action."

Applying that statute, the court concluded that defendant "unreasonably failed to give written notice of the wage claim" because he made a "wild guess" as to the amount of the unpaid wages requested in his demand letter to plaintiff (two $18,000 payments for two unpaid bonuses).[9] Defendant argues that the trial court misconstrued ORS 652.200(2) when it used its discretion to determine whether the content of the notice itself was reasonable, rather than determining

---

[8] Defendant argues that the trial court miscalculated the amount of the statutory penalty altogether and contends that it should have been in the amount of $13,846.20. As noted, we cannot tell exactly how the court determined the amount of the penalty or the facts that went into that calculation. On remand, the court should follow the statutory formula for determining the correct penalty based on the record before it and, after having done so, award the full amount.

[9] No one contends that the bonuses are not considered wages under the statute. *See Miller v. C. C. Meisel Co., Inc.*, 183 Or App 148, 157, 51 P3d 650 (2002) (wages include compensation such as a promise to pay a manager 20 percent of the added value to the company).

whether defendant unreasonably failed to give notice at all. Plaintiff contends that, regardless, the trial court properly denied fees under ORS 652.200(2) because defendant willfully violated the employment agreement. We agree with defendant's interpretation of ORS 652.200(2) but remand for further proceedings in light of plaintiff's argument.

We review the trial court's interpretation of a statute for legal error. *State v. Urie*, 268 Or App 362, 363, 341 P3d 855 (2014). Because the text of ORS 652.200(2) is clear and unambiguous and because the Supreme Court recently addressed its context and legislative history, a protracted discussion of the text, context, and legislative history of the statute is unnecessary to resolve the present dispute. *See Gaines*, 346 Or at 171-72 (explaining how we review statutory construction.). Defendant argues that "the word 'unreasonably' is an adverb, which modifies the verb 'fails' in the statute" and that the trial court "incorrectly uses 'unreasonably' as an adjective to modify the word 'notice.'" We recently came to a similar conclusion in *Trent v. Connor Enterprises, Inc.*, 300 Or App 165, 452 P3d 1072 (2019). In *Trent*, we rejected the argument that the court should generally evaluate whether notice was given "reasonably" under ORS 652.200(2) and concluded instead that the statute only creates a narrow exception to mandatory attorney fees: when an employee "unreasonably fail[s] to give written notice of the wage claim to the employer *before filing the action.*" *Id.* at 173 (emphasis in original; internal quotation marks omitted). Although here, the trial court ruled on the reasonableness of the amount of defendant's requested wages rather than the timeliness of his notice, we are constrained by the text of ORS 652.200(2)—as we were in *Trent*—to construe the word "unreasonably" to narrowly modify an employee's failure to give written notice of the wage claim before filing the action. *See Johnson v. O'Malley Brothers Corp.*, 285 Or App 804, 816, 397 P3d 554, *rev den*, 362 Or 300 (2017) ("That is, by the plain language of the statute, the failure to give written notice is immaterial unless that failure was also unreasonabl[e]." (Brackets in original; internal quotation marks omitted.)).

That interpretation is corroborated by the legislative history and context of ORS 652.200(2), which suggest that

the construction of the statute is designed to give employers prefiling opportunities to pay unpaid wage claims. *Mathis v. St. Helens Auto Center, Inc.*, 367 Or 437, 446-47, 478 P3d 946 (2020) ("Thus, liability for fees under ORS 652.200(2) arises in a context that assumes that the employer will have had multiple prefiling opportunities to avoid incurring the obligation to pay the employee's attorney fees—first by paying all wages when due, next by paying the outstanding wage obligation at least within the 48-hour grace period, and finally even by paying the outstanding wage obligation at any time before the employee has located an attorney and filed an action.").

Ultimately, the employer has the obligation to pay an employee any unpaid wages in the amount due. An employee may be incorrect in estimating the amount due when giving written notice, but that does not mean the employee unreasonably failed to give notice if the notice was otherwise timely as provided under ORS 652.200(2): namely, before the employee filed the action. The employer still has the obligation to pay the wages that are, in fact, due. *See Mathis*, 367 Or at 446 ("Oregon's wage statutes also impose obligations on employers to know what wages are due and when those wages are payable."). Accordingly, we conclude that the trial court erred in denying attorney fees to defendant on that basis because defendant's demand letter, which defendant's attorney sent before defendant filed his counterclaim for unpaid wages, gave plaintiff adequate written notice under ORS 652.200(2).

As noted, plaintiff argues that the trial court correctly denied defendant's attorney fees under a different exception to mandated attorney fees under ORS 652.200(2): when an employee willfully violates the contract of employment.[10] Plaintiff raised that argument to the trial court and developed that argument with evidence in the record, but the trial court did not make any findings on that issue. So,

---

[10] Plaintiff makes two other arguments that we summarily reject. First, plaintiff argues that defendant was not entitled to the fourth quarter 2020 bonus in the first instance. Second, plaintiff argues that there was no evidence to establish when the due date for payment of fourth quarter 2020 bonus occurred. We addressed identical arguments in plaintiff's cross-assignment to defendant's third assignment of error and reject them for the same reasons.

although we agree with plaintiff that a determination by the trial court that defendant willfully violated the contract of employment would preclude defendant from recovering mandatory attorney fees under ORS 652.200(2), we exercise our discretion to remand the question to the trial court so that it may rule on whether defendant *willfully* violated the employment contract in the first instance. *See Sherertz v. Brownstein Rask*, 314 Or App 331, 341, 498 P3d 850 (2021), *rev den*, 369 Or 338 (2022) ("If the argument is properly presented again on appeal and raises a question of law, we may simply resolve it, typically remanding only if it is necessary for the trial court to make factual findings from conflicting evidence, exercise discretion, or the like.").

## PLAINTIFF'S ATTORNEY FEES FOR ITS BREACH OF CONTRACT CLAIM

We now turn to defendant's sixth assignment of error, in which he contends that the trial court erred when it awarded plaintiff its attorney fees under a prevailing party attorney-fee provision in the parties' employment agreement. That award of attorney fees is reflected in the supplemental judgment.

In the trial court, plaintiff moved for its attorney fees under the employment agreement, which the trial court granted after it concluded that defendant breached that agreement by violating the nonsolicitation clause. Defendant first argues that plaintiff should not have prevailed on its breach of contract claim and thus should not have been awarded attorney fees as the prevailing attorney under the contract. Alternatively, he argues that the amount of fees awarded to plaintiff under that contract provision was unreasonable. We review a party's entitlement to attorney fees for legal error. *Makarios-Oregon, LLC v. Ross Dress-for-Less, Inc.*, 293 Or App 732, 739, 430 P3d 142, *adh'd to as modified on recons*, 295 Or App 449, 430 P3d 1125 (2018). But when reviewing the amount of attorney's fees rewarded, we review for abuse of discretion. *Id.*

We already concluded that the trial court did not err in ruling for plaintiff on its breach of contract claim after the court concluded that defendant breached the nonsolicitation

clause. We therefore assess only the reasonableness of the amount awarded to plaintiff for its attorney fees. Having reviewed the amount of the award for abuse of discretion in light of defendant's arguments and the relevant factors in ORS 20.075, we conclude that the trial court did not abuse its discretion in awarding $60,912.50 under the attorney-fee section of the employment agreement.

## CONCLUSION

In sum, we reject all of defendant's assignments of error except for his third and fourth assignments. We also reject plaintiff's cross-assignment of error. As to defendant's third assignment, we conclude that the trial court erred in reducing the statutory penalty award under ORS 652.150 and remand for further proceedings regarding the award. As to the fourth assignment, we conclude that the trial court erred in denying defendant his attorney fees under ORS 652.200(2) on that basis that it did, but we remand the attorney-fee issue for further proceedings to determine if defendant was not entitled to fees because he willfully violated the employment contract.

General judgment reversed and remanded for further proceedings consistent with this opinion; otherwise affirmed. Supplemental judgment affirmed.